**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CRAIG MOSKOWITZ, individually and on behalf of all others similarly situated,    : | |
|    : | Case No.: 2:14-cv-06010-LDW-AKT |
| Plaintiff,    : | |
|    : | |
| v.    : | |
|    : | |
| PULLIN LAW FIRM, P.C., a New York corporation,    : | |
|    : | |
| Defendant.    : | |

<u>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION
FOR CLASS CERTIFICATION AND FOR A TEMPORARY STAY OF
FURTHER PROCEEDINGS ON THAT MOTION**</u>

FOGELMAN & FOGELMAN, LLC
By: Matthew J. Fogelman, Esq.
305 Madison Avenue, Suite 936
New York, New York 10165
Tel: (617) 559-1530
mjf@fogelmanlawfirm.com

LEONARD LAW OFFICE, P.C.
By: Preston W. Leonard, Esq. (*pro hac vice* to be submitted)
63 Atlantic Avenue, 3rd Floor
Boston, Massachusetts 02110
Tel: (617) 329-1295
Pleonard@theleonardlawoffice.com

*Counsel for Plaintiff and the Putative Class*

INTRODUCTION ............................................................................................................1

STATEMENT OF FACTS................................................................................................4

**I. The Problem of Text Message Spam** ..................................................................4

**II. The Underlying Misconduct** ...........................................................................5

**III. The Proposed Class**...........................................................................................6

ARGUMENT ...................................................................................................................7

**I. By Taking This Motion Under Submission To Permit Discovery, This Court Will Avoid The Need to Resolve An Inter-Circuit Conflict On Whether A Defendant's Offer Of Full Relief On A Plaintiff's Individual Claim Moots The Plaintiff's Class Claims**................................................................................7

**II. This Court Should Take This Motion Under Submission And Stay Further Activity On This Motion Until After The Parties Have Completed The Necessary Discovery**.............................................................................................8

**III. In the Alternative, the Court Should Certify Plaintiff's Proposed Class and Appoint Plaintiff's Counsel as Class Counsel**...............................................10

    **A. Standards for Class Certification**.............................................................10

        1. The Requirement of Numerosity is Satisfied................................11

            a. *Plaintiff alleges that the putative Class contains at least hundreds of members*...........................................12

            b. *The proposed Class is ascertainable*................................13

        2. The Requirement of Commonality is Satisfied.........................14

        3. Plaintiff's Claims Are Typical of the Claims of the Class........................16

        4. The Requirement of Adequate Representation is Satisfied ......................17

        5. The Proposed Class Meets the Requirements of Rule 23(b)(3)................18

            a. *Common issues predominate* ........................................19

            b. *This class action is a superior method for the adjudication of the controversy*..........................................20

**B.**  **The Court Should Appoint Plaintiff's Counsel As Class Counsel**...................21

**CONCLUSION** .................................................................................................................22

# Table of Authorities

**United States Supreme Court**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................................. 19

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ..................................................................... 10

*Mims v. Arrow Financial Services*, 132 S.Ct. 740 (2012) ............................................................. 4

**United States Circuit Court of Appeals**

*Carnegie v. Household Int'l Inc.*, 376 F.3d 656 (7th Cir. 2004) .................................................. 19

*Chateau de Ville Productions, Inc. v. Tams-Witmark Music Library, Inc.,* 586 F.2d 962
   (2d Cir. 1978) ............................................................................................................................. 9

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir.1995) ....................................... 12

*Damasco v. Clearwire Corp.*, 662 F.3d 891 (7th Cir. 2011) ............................................. 2, 3, 8, 9

*Diaz v. First American Home Buyer's Protection Corp.*, 732 F.3d 948 (9th Cir. 2013) ............ 1, 7

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001) ............................ 11

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998) ........................................................................... 14

*Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239 (10th Cir. 2011) ...................... 1, 7

*McCauley v. TransUnion, LLC*, 402 F.3d 340 (2d Cir. 2005) ....................................................... 2

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006) .................................................. 21

*Pitt v. Terrible Herbst, Inc.*, 653 F.3d 1081 (9th Cir. 2011) ..................................................... 1, 7

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir.1993) ........................................................................ 12

*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992) .............................................................. 14, 16

*Sandoz v. Cingular Wireless LLC*, 553 F.3d 913 (5th Cir. 2008) .............................................. 1, 7

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) ........................................... 4

*Weiss v. Regal Collections*, 385 F.3d 337 (3d. Cir. 2004) ........................................................ 1, 7

## United States District Court

*Abbas v. Selling Source, LLC*, No. 09CV3413, 2009 WL 4884471 (N.D. Ill. Dec. 14, 2009) ...... 4

*Ackerman v. Coca-Cola Co.*, No. 09 CV 395(DLI)(RML), 2013 WL 7044866 (E.D.N.Y. 2013) ................................................................................................ 13, 16

*Anderson v. Cornejo*, 199 F.R.D. 228 (N.D. Ill. 2000) ................................................ 11

*Bais Yaakov of Spring Valley v. Varitronics, LLC et al*, No. 7:14-cv-3083(CS)(LMS) (May 6, 2014 Memo Endorsement) (S.D.N.Y.) ....................................................... 3, 9

*Baxter v. Kawasaki Corp.*, 259 F.R.D. 336 (N.D. Ill. 2009) ........................................ 20

*Brady v. LAC, Inc.*, 72 F.R.D. 22 (S.D.N.Y. 1976) ..................................................... 21

*Cassese v. Wash. Mutual., Inc.*, 255 F.R.D. 89 (E.D.N.Y. 2008) ........................... 10, 11

*CE Design v. Beaty Const., Inc.*, No. 07-cv-3340, 2009 WL 192481 (N.D. Ill. 2009) .... 15, 16, 20

*Clark v. Sprint Spectrum L.P.,* No. 10-civ-9702-CAS-(SSx), 2011 WL 835487 (C.D. Cal. 2011) .......................................................................................... 9

*Daniels v. Amerco*, No. No. 81 Civ. 3801 (RLC), 1982 WL 1856 (S.D.N.Y. 1982) .................. 9

*Eovaldi v. First Nat'l Bank of Chicago*, 57 F.R.D. 545 (N.D. Ill. 1972) .................................... 21

*Gasper v. Linvatec Corp.*, 167 F.R.D. 51 (N.D. Ill. 1996) ......................................... 16

*Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394 (N.D. Ill. 1987) .............................. 18

*Gortat v. Capala Bros., Inc.*, No. 07-cv-3629, 2010 WL 1423018 (E.D.N.Y. 2010) ................. 13

*Hertz v. Canrad Precision Industries, Inc.*, No. 69-Civ-174, 1970 WL 236 (S.D.N.Y. 1970) .... 18

*Hinman v. M&M Rental Ctr.*, 545 F.Supp.2d 802 (N.D. Ill. 2008) ............................... 11

*Hylaszek v. Aetna Life Ins. Co.*, No. 94-C-5961, 1998 WL 381064 (N.D. Ill. 1998) .................. 19

*In re Alcoholic Beverages Litig.*, 95 F.R.D. 321 (E.D.N.Y. 1982) ............................... 12

*In re Playmobil Antitrust Litig.,*  35 F.Supp.3d 231 (E.D.N.Y. 1998) ...................... 17, 19

*Kavu, Inc. v. Omnipak Corp.,* 246 F.R.D. 642 (W.D. Wash. 2007) ....................... 11, 15

*Kaye v. Amicus Mediation & Arbitration Group, Inc.*, No. 13–CV–347 (JCH), 2014 WL 2207431 (D. Conn. 2014) ........................................................ 11, 12, 17

v

*Kremnitzer v. Cabrera & Rephen, P.C.*, 202 F.R.D. 239 (N.D. Ill. 2001) .................................... 20

*Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292 (N.D. Cal. 2013) ................................ 11, 16, 20

*Lozano v. Twentieth Century Fox*, 702 F.Supp.2d 999 (N.D. Ill. 2010) ........................................ 4

*Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674 (S.D. Fla. 2013) .............. 16

*Maxwell v. Arrow Fin. Servs., LLC*, No. 03-C-1995, 2004 WL 719278 (N.D. Ill. 2004) ..... passim

*Miller v. Wexler & Wexler*, No. 97-C-6593, 1998 WL 60798 (N.D. Ill. 1998) ........................... 12

*Mitchem v. Illinois Collection Service*, 271 F.R.D. 617 (N.D. Ill. 2011) .................................... 11

*Monaco v. Stone*, 187 F.R.D. 50 (E.D.N.Y. 1999) ........................................................................ 14

*Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330 (S.D.N.Y. 2004) ............................................... 13

*Pleasant v. Risk Mgmt. Alternatives, Inc.*, No. 02-C-6886, 2003 WL 22175390
 (N.D. Ill. 2003) ........................................................................................................................ 20

*Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424 (N.D. Ill. 2003) ............................ 16

*Scholes v. Stone, McGuire, & Benjamin*, 143 F.R.D. 181 (N.D. Ill. 1992) ................................ 15

*Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648 (N.D. Ill. 2006) .............................................. 12

*Whitten v. ARS Nat'l Servs. Inc.*, No. 00-C-6080, 2001 WL 1143238 (N.D. Ill. 2001) .............. 14

**Statutes**

47 U.S.C. § 227, *et seq.* .......................................................................................................... 1, 4, 5

Federal Rule of Civil Procedure 68 ........................................................................................ 1, 2, 7

Federal Rules of Civil Procedure 23 ....................................................................................... passim

**Miscellaneous**

Fed. Prac. & Proc. Civ. § 1760 (2d ed. 1987) ............................................................................... 13

*In the Matter of Rules and Regulations Implementing the Telephone Consumer
 Protection Act of 1991* ............................................................................................................. 4

Manual for Complex Litigation (Fourth) § 21.14 (2004) ............................................................. 10

Newberg on Class Actions § 4:24 (4th ed. 2002) ........................................................................ 19

Newberg on Class Actions § 7:16 (4th ed. 2002) .......................................................... 10

Newberg on Class Actions § 7.20 (4th ed. 2002) ................................................... 12, 13

# INTRODUCTION

On October 14, 2014, Plaintiff Craig Moskowitz ("Plaintiff") filed his putative Class Action Complaint against Defendant Pullin Law Firm, P.C. ("Defendant") for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. (the "TCPA"). Although this action is only in the pleading phase, and Defendant has not yet appeared or filed any responsive pleading, Plaintiff has filed the instant Motion at this very early stage for a prophylactic purpose: to avoid any potential controversy that could arise if Defendant were to make an offer of judgment on Plaintiff's individual claim pursuant to Federal Rule of Civil Procedure 68 prior to Plaintiff's filing of a class certification motion.

The instant Motion seeks to protect Plaintiff from being "picked off" while permitting this Court to avoid ruling on an unsettled issue, as the effect of any such offer of judgment in the class action context is unclear in the Second Circuit. On the one hand, the Ninth Circuit has recently ruled that an unaccepted Rule 68 offer of complete individual relief does not render either a putative class plaintiff's individual or class claims moot. *See Diaz v. First American Home Buyer's Protection Corp.*, 732 F.3d 948, 952-54 (9th Cir. 2013). Likewise, the Third, Fifth, Ninth, and Tenth Circuits have ruled that, after a defendant has made an offer of relief for the full amount of a plaintiff's individual claims in a yet-to-be-certified class action, the class claims are not rendered moot, and the plaintiff may subsequently move for class certification without undue delay. *See Pitt v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091-92 (9th Cir. 2011); *Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1249-50 (10th Cir. 2011); *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 920-21 (5th Cir. 2008); *Weiss v. Regal Collections*, 385 F.3d 337, 348 (3d. Cir. 2004). On the other hand, the Seventh Circuit reached a different

conclusion in *Damasco v. Clearwire Corp.*, 662 F.3d 891, 894-97 (7th Cir. 2011), finding that an offer of full individual relief made prior to a plaintiff moving for class certification mooted the plaintiff's class claims. In reaching its conclusion, the Seventh Circuit found that the defendant's offer of complete relief would *not* have mooted the class claims – and that the plaintiff could have continued to pursue class relief – if the plaintiff had filed his motion for class certification at the beginning of the litigation, prior to receiving the defendant's offer of complete relief. *Id.* at 896 ("Class-action plaintiffs can move to certify the class at the same time that they file their complaint. The pendency of that motion protects a putative class from attempts to buy off the named plaintiffs.") When addressing the practical implications of moving for class certification at the early stages of the litigation, the Seventh Circuit reasoned that "[i]f the parties have yet to fully develop the facts needed for certification, then they can further ask the district court to delay its ruling to provide time for additional discovery or investigation." *Id.* (citations omitted).

The Second Circuit has not directly ruled on this issue. While the Second Circuit has ruled that a Rule 68 offer of complete relief to an individual plaintiff in a non-class action case does *not*, by itself moot the plaintiff's claims, the Second Circuit also ruled in that same case that the trial court can, under certain circumstances, enter a default judgment against the defendant for the complete relief described in the defendant's Rule 68 offer and thereby moot the case in that manner. *See McCauley v. TransUnion, LLC*, 402 F.3d 340, 342 (2d Cir. 2005). The Second Circuit has never ruled on the question of whether a Rule 68 offer of complete individual relief to a putative class plaintiff can be utilized to moot the claims of the putative class.

Although Plaintiff submits that the majority position – that held by the Third, Fifth, Ninth, and Tenth Circuits – is the correct and better-reasoned position, Plaintiff seeks to avoid requiring this Court to have to even take sides in this inter-circuit conflict and is thus following

the preemptive procedure invited by the Seventh Circuit in *Damasco*: filing an early class certification motion accompanied by a request to delay ruling on that motion until after the parties have had the opportunity to conduct appropriate discovery. By filing this Motion, Plaintiff seeks to preserve his ability to have the Court rule on the merits of class certification in this case regardless of which of the two conflicting lines of federal precedent were to apply. Beyond the authority set forth by *Damasco* to grant this Motion, there is also ample authority from within this Circuit and elsewhere for this Court to defer consideration of a class certification motion to enable the parties to conduct discovery. In fact, Judge Seibel of the Southern District of New York very recently stayed a substantially similar motion in a TCPA class action, waiving the pre-motion conference requirement and staying all further proceedings on the plaintiff's motion for class certification. *See Bais Yaakov of Spring Valley v. Varitronics, LLC et al*, No. 7:14-cv-3083(CS)(LMS) (May 6, 2014 Memo Endorsement) (S.D.N.Y.). This Court should follow Judge Seibel's ruling.

As set forth in greater detail below, Plaintiff believes that it is prudent for the parties to conduct discovery prior to the Court ruling on the appropriateness of class certification here. To the extent that the Court agrees that discovery is necessary and appropriate, the Court should defer any further activity on this Motion until after such discovery is completed. Alternatively, to the extent that the Court seeks to determine the appropriateness of class certification without discovery, Plaintiff requests that, based on the evidence obtained so far, this Court certify the class that he seeks to represent and appoint Plaintiff's counsel as Class Counsel.

# STATEMENT OF FACTS

**I.** **The Problem Of Text Message Spam**

"Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Financial Services*, 132 S.Ct. 740, 744 (2012). "In enacting the TCPA [in 1991], Congress noted the nuisance of rampant telemarketing and the consequent costs of money, time, and the invasion of privacy to consumers." *See Abbas v. Selling Source, LLC*, No. 09CV3413, 2009 WL 4884471, at *7 (N.D. Ill. Dec. 14, 2009) (internal citations omitted); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009); *see also Lozano v. Twentieth Century Fox*, 702 F. Supp. 2d 999, 1008 (N.D. Ill. 2010). Consequently, the TCPA prohibits parties from making:

> any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii).

The Federal Communication Commission – which, under 47 U.S.C. § 227(b)(2), is required to "prescribe regulations to implement the requirements" of the TCPA – has made clear that the transmission of text messages falls under the purview of the TCPA. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014, 14115, 2003 WL 21517853 (2003) (ruling that the TCPA prohibition on unsolicited calls "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls provided the call is made to a telephone number assigned to such

service.")  The TCPA sets statutory damages in the amount of $500.00 per violation, with an allowance for trebling.  *See* 47 U.S.C. § 227(b)(3)(B-C).

In response to laws limiting their ability to solicit customers via telephone and facsimile transmission, advertisers have in recent years sought alternative low-cost technologies to reach consumers *en masse*.  (*See* Plaintiff's Class Action Complaint ("Compl.") ¶ 11.)  One of the newer types of inexpensive bulk marketing uses technology known as Short Message Services ("SMS").  (*Id.* ¶¶ 11-12.)  SMS is a messaging system that allows for the transmission of short text message calls, usually limited to about 160 text characters, to be made to and from cellular telephones.  (*Id*. ¶¶ 12-13.)  An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to that device.  (*Id.* ¶ 13.)  When an SMS text message call is successfully made, the recipient's cellular telephone rings, alerting him or her that a call is being received.  (*Id.*)

Text spam is an especially invasive form of advertising not only because consumers are subjected to a violation of their right to privacy, but also because of the annoyance and aggravation that necessarily accompanies unsolicited wireless spam.  Adding insult to injury, the recipients often have to pay their cell phone service providers for the receipt of such wireless spam or request that more such spam not be sent in the future, notwithstanding that it is sent in violation of specific legislation on the subject.  (Compl. ¶ 14.)

## II.    The Underlying Misconduct

Typical of most actions brought pursuant to the TCPA, the facts in this case are relatively straightforward.  Defendant is a law firm seeking to expand its client base.  In or about July 2013, Defendant undertook a misguided effort to attract new clients by transmitting spam text message advertisements to hundreds, if not thousands, of individuals, including Plaintiff.

(Compl. ¶¶ 1, 15.)  In order to cause these messages to be transmitted, Defendant provided lists of consumers' cellular telephone numbers to third-party dialers.  To place these calls, Defendant and its agents employed certain technology allowing for the bulk transmission of text messages—equipment that the FCC has found to be an "automatic dialing system" subject to the provisions and prohibitions of the TCPA.  (*Id.* ¶ 20, 32.)

For instance, on July 9, 2013, Plaintiff's cell phone rang, indicating that a text call was being received.  The body of such text message read:

> Breaking News! Allan Pullin Esq: Fannie Mae agrees to 11.6 Billion Settlement.
> Call me to see how this effects YOUR home loan terms, My#: 800-867-2790

(Compl. ¶ 16.)  Plaintiff – and, upon information and belief, hundreds or thousands of other Class members – received text message advertisements from Defendant in the last four years.  (*Id.* ¶¶ 19, 24.)  At no point did Plaintiff or any of the Class members expressly consent to the receipt of such messages.  (*Id.* ¶¶ 21, 33.)

Although the process by which this and other unauthorized text messages were sent is seemingly complex, in reality, Defendant – working with agents with whom it contracted – simply sent unauthorized text messages to cell phone numbers contained in a compiled list.  The specific steps involved in this text spam campaign, which can be further illuminated through the discovery process, will be set forth in greater detail in Plaintiff's reply brief and will reveal with abundant clarity that substantively identical messages were sent from the same or similar numbers to a pre-arranged list of phone numbers by and on behalf of Defendant.

## III.    The Proposed Class

Plaintiff seeks to represent a class consisting of all persons in the United States who were sent at least one text message from Defendant without providing prior express consent to be sent

such text message (the "Class"). (*Id.* ¶ 23.) As explained below, the ascertainable Class clearly

satisfies each of the certification prongs under Rule 23 of the Federal Rules of Civil Procedure.

In the end, a class action is not only appropriate here, it is also the only way that the putative

Class members will obtain appropriate redress for Defendant's unlawful conduct.

## ARGUMENT

**I.    By Taking This Motion Under Submission To Permit Discovery, This Court Will Avoid The Need to Resolve An Inter-Circuit Conflict On Whether A Defendant's Offer Of Full Relief On A Plaintiff's Individual Claim Moots The Plaintiff's Class Claims**

As set forth above, four Circuits have already ruled that a defendant's offer of judgment

for the full amount of a plaintiff's individual claims does not moot the plaintiff's remaining class

claims and, as such, the plaintiff may continue to pursue certification of the class. *See Diaz*, 732

F.3d at 952-54; *Pitts*, 653 F.3d at 1091-92 ("an unaccepted Rule 68 offer of judgment – for the

amount of the named plaintiff's individual claim and made before the named plaintiff files a

motion for class certification – does not moot a class action"); *Lucero*, 639 F.3d at 1249-50 ("the

federal court's Article III jurisdiction to hear the motion for class certification is not extinguished

by the Rule 68 offer of judgment to an individual plaintiff"); *Sandoz*, 553 F.3d at 921 ("If the

court ultimately grants the motion to certify, then the Rule 68 offer to the individual plaintiff

would not fully satisfy the claims of everyone in the collective action; if the court denies the

motion to certify, then the Rule 68 offer of judgment renders the individual plaintiff's claims

moot"); *Weiss*, 385 F.3d at 348 ("Absent undue delay in filing a motion for class certification,

therefore, where a defendant makes a Rule 68 offer to an individual claim that has the effect of

mooting possible class relief asserted in the complaint, the appropriate course is to relate the

certification motion back to the filing of the class complaint.") The Second Circuit has not yet

ruled on this matter, but if it were to accept this precedent from the majority of Circuits that have addressed the issue, Plaintiff would not face any potential obstacles to certifying a class under Rule 23 resulting from any potential offer of judgment made by Defendant.

The Seventh Circuit has disagreed with these other four Circuits, however, concluding that "a plaintiff cannot avoid mootness by moving for class certification after receiving an offer of full relief." *Damasco*, 662 F.3d at 895. Nevertheless, *Damasco* explicitly stated that class plaintiffs can avoid having an offer of judgment moot their class claims by filing a class certification motion at the inception of the litigation, or before ay such offer of judgment is made. *Id*. at 896. The *Damasco* court further stated that a plaintiff can ask the court to defer ruling on a class certification motion to permit the parties to conduct the appropriate discovery:

> A simple solution to the buy-off problem that Damasco identifies is available, and it does not require us to forge a new rule that runs afoul of Article III: Class-action plaintiffs can move to certify the class at the same time that they file their complaint . . . . If the parties have yet to fully develop the facts needed for certification, then they can also ask the district court to delay its ruling to provide time for additional discovery or investigation.

*Id*.

As previously discussed, Plaintiff believes that the first line of precedent – the one adopted by the majority of Circuits to have addressed the issue – is the better-reasoned analysis and the appropriate conclusion based on the purpose of Rule 23. Nevertheless, this Court need not address the merits of whether an offer of relief for a plaintiff's individual claims moots the plaintiff's class claims. To avoid any problems that might arise if this Court or the Second Circuit were to follow *Damasco*, Plaintiff is simply following the Seventh Circuit's guidance and filing this Motion in order to move for class certification prior to even potentially receiving any offer of judgment from Defendant. By filing this Motion, Plaintiff seeks to preserve his ability to

obtain this Court's ruling on his class certification motion under either line of caselaw.

**II.     This Court Should Take This Motion Under Submission And Stay Further Activity On This Motion Until After The Parties Have Completed The Necessary Discovery**

As set forth in more detail below, Plaintiff is confident that the facts known to him are already sufficient to warrant certification of the proposed class.  Nonetheless, Plaintiff believes that the best course of action – to maximize judicial economy, for fairness to the parties, and in the best interests of justice – is for this Court to defer ruling on this Motion until both parties have had sufficient opportunity to conduct discovery and investigation into the various issues that will fully inform the Court's determination of the class certification issue.  Besides being authorized by *Damasco*, a deferment on the ruling of this Motion to permit the parties to conduct discovery is supported by significant authority from within the Second Circuit and elsewhere. *See, e.g., Chateau de Ville Productions, Inc. v. Tams-Witmark Music Library, Inc.,* 586 F.2d 962, 966 (2d Cir. 1978) ("[A trial] court should defer decision on certification pending discovery if the existing record is inadequate. . . .  Failure to allow discovery, where there are substantial factual issues relevant to certification of the class, makes it impossible for the party seeking discovery to make an adequate presentation either in its memoranda of law or at the hearing on the motion if one is held"); *Bais Yaakov of Spring Valley*, No. 7:14-cv-3083(CS)(LMS) (May 6, 2014 Memo Endorsement) (S.D.N.Y.) (staying all further proceedings on a substantially similar motion filed in a TCPA class action); *Daniels v. Amerco*, No. No. 81 Civ. 3801 (RLC), 1982 WL 1856, *1 (S.D.N.Y. 1982) (deferring ruling on pending class certification motion to permit the parties to conduct full discovery to develop full record upon which court could make class certification ruling); *Clark v. Sprint Spectrum L.P.,* No. 10-civ-9702-CAS-(SSx), 2011 WL 835487, *2 (C.D. Cal. 2011) (granting motion for extension to file class certification ruling

where "discovery is in the early stages and the Rule 16 scheduling conference has not yet occurred. . . ."); 3 *Newberg on Class Actions* § 7:16 (4th ed.) ("Apart from the disposition of various motions, class rulings are often deferred pending certain events such as discovery on class issues. . . ."); Manual for Complex Litigation (Fourth) § 21.14, at 255 (2004).

In this case, permitting the parties to conduct discovery would allow them to develop evidence relating to such matters as the actual number of individuals to whom Defendant sent the unauthorized text message, the equipment used to transmit the messages, and the systematic nature by which Defendant gathered telephone numbers and transmitted the messages. Such information is in the possession of Defendant and/or its agents and is, thus, appropriate for class discovery. Accordingly, this Court has legal authority and good cause to defer further consideration of this class certification motion until after the parties have had an adequate opportunity to conduct discovery.

**III.    In the Alternative, The Court Should Certify Plaintiff's Proposed Class And Appoint Plaintiff's Counsel as Class Counsel**

**A.    Standards for Class Certification**

To obtain class certification, it is not necessary for a plaintiff to establish that she will prevail on the merits of the action. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("[T]he question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.") (internal quotation marks and citation omitted). In determining whether to certify a class, "a court assumes the existing allegations in the complaint to be true, and takes a liberal rather than a restrictive approach in determining whether plaintiffs satisfy these requirements." *Cassese v. Wash. Mutual., Inc.*, 255 F.R.D. 89, 95 (E.D.N.Y. 2008) (citing *In re Visa Check/MasterMoney*

*Antitrust Litig.*, 280 F.3d 124, 133 (2d Cir. 2001)); *Maxwell v. Arrow Fin. Servs., LLC*, No. 03-C-1995, 2004 WL 719278, *1 (N.D. Ill. 2004) ("For the purposes of a motion to certify a class, the allegations in the complaint are presumed to be true.") Thus, courts are required to analyze the allegations of the complaint and any evidence submitted by the parties with a presumption in favor of certification. *Anderson v. Cornejo*, 199 F.R.D. 228, 237 (N.D. Ill. 2000).

A court may certify a class when the plaintiff demonstrates that the proposed class and proposed class representatives meet the prerequisites of numerosity, commonality, typicality and adequacy of representation, as well as one of the three provisions of Rule 23(b). Fed. R. Civ. P. 23; *see also Cassese*, 255 F.R.D. at 96. After meeting the strictures of Rule 23(a), a plaintiff seeking certification under Rule 23(b) must then demonstrate that common questions of law or fact predominate and that maintaining the suit as a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3). Many federal courts have certified class actions under the TCPA, including cases like the instant one relating to text message violations. *See, e.g., Kaye v. Amicus Mediation & Arbitration Group, Inc.*, No. 13–CV–347 (JCH), 2014 WL 2207431 (D. Conn. 2014); *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292 (N.D. Cal. 2013); *Mitchem v. Illinois Collection Service*, 271 F.R.D. 617 (N.D. Ill. 2011); *Hinman v. M&M Rental Ctr.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008); *Kavu, Inc. v. Omnipak Corp.,* 246 F.R.D. 642 (W.D. Wash. 2007).

Accordingly, although discovery is desirable, as explained further below, all the prerequisites for class certification have been met here, and this Court should certify the Class and appoint Plaintiff's counsel as Class Counsel.

### 1.   The Requirement of Numerosity Is Satisfied.

The first step in certifying a class is a showing that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). To satisfy this requirement a plaintiff

need not demonstrate the exact number of class members, but must offer a good faith estimate as to the size of the class. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006). Numerosity is presumed for a class in excess of forty members. *See Kaye*, 2014 WL 2207431, at *8 (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995)). "[E]vidence of exact class size or identity of class members" is not required, *see Kaye*, 2014 WL 2207431, at *8 (quoting *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.1993)), and in fact, "[t]he court is permitted to make common-sense assumptions that support a finding of numerosity." *Maxwell*, 2005 WL 719278, at *2. It is not necessary that the precise number of class members be known: "A class action may proceed upon estimates as to the size of the proposed class." *In re Alcoholic Beverages Litig.*, 95 F.R.D. 321, 324 (E.D.N.Y. 1982). "In cases where class numerosity is not precisely known, general knowledge or common sense will often support judicial notice or an assumption that there is sufficient numerosity to make joinder impracticable." 3 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 7.20, at 66 (4th ed. 2002); *see also see also Miller v. Wexler & Wexler*, No. 97-C-6593, 1998 WL 60798, at *3 (N.D. Ill. 1998) (listing cases certifying classes with between 17 and 40 members and emphasizing that there is no "magical number at which the numerosity is satisfied.")

> a. *Plaintiff alleges that the putative Class contains at least hundreds of members*.

In this case, the allegations of the Complaint, as well as common sense based on the Defendant's practices, adequately demonstrate numerosity. Plaintiff alleges that there are hundreds, if not thousands, of members of the Class. (Compl. ¶ 24.) Because definitive evidence of numerosity can only come from the records of Defendant and its agents, it is proper to rely upon the allegations of the Complaint in certifying the class. *See* 2 A. Conte & H.

Newberg, Newberg on Class Actions § 7.20, at 66 (stating that where class numerosity information is in the possession of the party opposing the class, courts generally rely on the complaint as prima facie evidence or defer ruling.)  The nature of Defendant's business is such that these text message advertisements are sent in bulk to reach numerous potential clients, a conclusion further supported by the fact that the text message at issue was impersonal and did not identify any specific recipient.  Accordingly, it is a clear "common sense assumption" that Defendant sent the text message advertisement at issue to more than 40 individuals – and likely hundreds, if not thousands, of individuals – although additional discovery is needed to obtain more specific evidence as to the precise number of individuals to whom the messages were sent.

b.    *The proposed Class is ascertainable.*

In determining the suitability of maintaining the case as a class action, the Court must determine whether the class members can be readily identified.  The class definition must show that the class is indeed identifiable as such.  *See Ackerman v. Coca-Cola Co.*, No. 09 CV 395(DLI)(RML), 2013 WL 7044866, *15 (E.D.N.Y. 2013); 7A Charles Alan Wright & Arthur R. Miler, Federal Practice & Procedure § 1760, at 121 (2d ed. 1987) (noting that the class must be defined in way that is administratively feasible for court to determine whether particular individual is a member).  The standard for ascertainability "is not demanding."  *Gortat v. Capala Bros., Inc.*, No. 07-cv-3629, 2010 WL 1423018, at *2 (E.D.N.Y. 2010).  Ascertainability is "designed only to prevent the certification of a class whose membership is truly indeterminable." *Gortat,* 2010 WL 1423018, at *2.  "[A]lthough the membership of the class must be ascertainable 'at some point in the case,' it need not be determined prior to class certification." *Ackerman*, 2013 WL 7044866, at *15 (quoting *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 341-42 (S.D.N.Y. 2004)).

13

Here, the Class is readily ascertainable and is defined with this goal in mind. The Class consists only of individuals who received one or more unauthorized text messages from Defendant within the statutory four-year period. Defendant and its agents maintain, or should maintain, records of the telephone numbers of each call recipient, and likely also maintain records of names associated with those numbers. But even if Defendant only has records of the telephone numbers to which these calls were placed, a "reverse look up" from the telephone carriers that can identify the names associated with the relevant telephone numbers can readily be performed. Further, even if Defendant and its agents no longer have records of which telephone numbers were called, records from telephone carriers, as well as third-party information service companies, will be able to identify who received a text call from Defendant. Consequently, the members of the putative Class here can be easily and objectively identified from the records of Defendant, its agents, telephone carriers, and third-party service companies, once those records are produced.

2.    <u>The Requirement of Commonality is Satisfied</u>.

The second threshold to certification requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This element is met where a "common nucleus of operative fact" exists, even if as to one common question. *See Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); *see also Monaco v. Stone*, 187 F.R.D. 50, 61 (E.D.N.Y. 1999) ("A single common question of law is sufficient to satisfy the commonality requirement.") Commonality is often found where "defendants have engaged in standardized conduct toward members of the proposed class." *Whitten v. ARS Nat'l Servs. Inc.*, No. 00-C-6080, 2001 WL 1143238, *3 (N.D. Ill. 2001) (quoting *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)). The requirement of commonality is a relatively low and easily surmountable hurdle. *Scholes v.*

*Stone, McGuire, & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).

As alleged in this case, all Class members share a claim that arose out of the same activity of the Defendant, which is based on the same legal theory – violation of the TCPA – and which implicates, among others, the following questions or issues of fact: whether Defendant sent text messages to persons who did not previously provide Defendant with consent to send text messages to their respective telephones; whether the text messages were sent using an automatic telephone dialing system; whether the text messages violated the Class members' respective rights to privacy; whether Defendant's conduct in violation of the TCPA was "willful" such that the Class members are entitled to treble damages; and whether Defendant should be enjoined from engaging in such conduct in the future. (Compl. ¶ 25.)

The only potential distinction among Class members is the number of unauthorized messages they received. As discussed above, even the identification of the Class members is a straightforward issue requiring only the administrative task of reviewing the records of Defendant and, perhaps, of certain telephone carriers. Accordingly, common issues of fact and law predominate over any individual issues, and Plaintiff has satisfied this low hurdle to certification.

Even Defendant's possible argument that the Court will need to engage in an individualized inquiry as to whether members of the class "consented" to receive the text message would be unavailing for multiple reasons. Numerous courts have held that the possible existence of a consent defense is either insufficient to defeat class certification, *e.g., CE Design v. Beaty Const., Inc.*, No. 07-cv-3340, 2009 WL 192481, at *8-9 (N.D. Ill. 2009), or that common proof applicable to the class developed during class discovery can defeat the consent defense. *See, e.g., Kavu*, 246 F.R.D. at 647.

3.     Plaintiff's Claims Are Typical of the Claims of the Class.

Rule 23 next requires that class representatives have claims that are typical of those of the putative class members. Fed. R. Civ. P. 23(a)(3). This prerequisite requires that the claims of the named plaintiff are typical of the claims of the class, stemming from the same course of conduct and resting on the same legal theory. *See Ackerman*, 2013 WL 7044866, at *11; *Rosario*, 963 F.2d at 1018; *Maxwell*, 2004 WL 719278 at *4. However, "[t]ypical does not mean identical, and the typicality requirement is liberally construed." *Gasper v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996); *Ackerman*, 2013 WL 7044866, at *11 (stating that typicality is satisfied even if there are minor variations in the fact patterns underlying individual claims, so long as it is alleged that the same unlawful conduct was directed at or affected the named plaintiff and the putative class) (quotations and citations omitted). The existence of factual differences will not preclude a finding of typicality—the claims of a named plaintiff need only share "the essential characteristics" as those of the class." *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 432 (N.D. Ill. 2003). Typicality has been found in numerous TCPA cases. For example, courts have found typicality where a defendant's practice of sending unsolicited advertisements to the named plaintiff and the proposed class resulted in the claims of the potential plaintiff being "based upon the same legal theory, *i.e.* violation of the TCPA." *CE Design*, 2009 WL 192481 at *5; *See also, e.g., Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 687-88 (S.D. Fla. 2013); *Stonebridge*, 289 F.R.D. at 294-95.

In this case, each of the Class members has been subjected to the same practice as Plaintiff. Plaintiff and the Class members were all sent a text message from Defendant without previously providing express consent for such messages. In short, the claims of Plaintiff and each of the putative Class members all turn on the legality of the practice of Defendant and its

agents of using automated equipment to sent text messages without the prior authorization of the individuals to whom the messages were sent. Further, Plaintiff and the proposed Class members have alleged that this conduct violated the TCPA, which would provide identical statutory damages to all Class members. Accordingly, Plaintiff's claims are typical of those of the Class and Rule 23(a)(3) is satisfied.

4. The Requirement of Adequate Representation is Satisfied.

The final Rule 23(a) prerequisite requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In assessing adequacy of representation, courts seek to ensure (1) that the named plaintiff's interests are not antagonistic to the interests of other class members and (2) that plaintiff's counsel is qualified, experienced, and able to conduct the litigation. *Kaye*, 2014 WL 2207431, at *10; *Maxwell*, 2004 WL 719278, at *5. The class representative must not have "antagonistic or conflicting claims with other members of the class," and must have a "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Maxwell*, 2004 WL 719278, at *5 (internal quotation marks and citation omitted). "Absent any conflict between the interests of the representatives and [other class members], and absent any indication that the representative will not aggressively conduct the litigation, fair and adequate protection of the class may be assumed." *In re Playmobil Antitrust Litig.*, 35 F.Supp.3d 231, 243 (E.D.N.Y. 1998) (internal quotations and citations omitted).

In this case, Plaintiff has the same interests as the proposed Class members – all have received unauthorized text messages from Defendant – and his pursuit of this matter has demonstrated that he will be a zealous advocate for the Class. The proposed class representative, thus, has no interests antagonistic to the interests of the proposed Class.

There is a general presumption of competence for all members of the bar in good standing unless evidence to the contrary is adduced. *See, e.g., Hertz v. Canrad Precision Industries, Inc.*, No. 69-Civ-174, 1970 WL 236, *1 (S.D.N.Y. 1970) ("Plaintiffs' counsel are experienced in the area of law involved in this case. Until the contrary is clearly demonstrated, we will assume that members of the bar are skilled at their profession.") It is persuasive evidence of the adequacy of proposed class counsel that they have been found adequate in other cases. *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987).

Proposed class counsel, Matthew Fogelman of Fogelman & Fogelman, LLC and Preston W. Leonard of Leonard Law Office, P.C., have regularly engaged in major complex and class action litigation and have extensive experience in consumer class action lawsuits. Proposed class counsel also have an in-depth knowledge of the substantive law at issue in this case. (*See* Declaration of Matthew Fogelman ("Fogelman Decl."), ¶¶ 2-3, 5; Declaration of Preston W. Leonard ("Leonard Decl."), ¶¶ 2-3.) Further, Plaintiff's counsel have been appointed as class counsel in several complex consumer class actions. (*See* Fogelman Decl. ¶ 2; Leonard Decl. ¶ 2.)

Accordingly, Plaintiff's counsel will adequately represent the instant Class.

5. The Proposed Class Meets the Requirements of Rule 23(b)(3).

Once the subsection (a) prerequisites are satisfied, one of the three requirements of Rule 23(b) must also be satisfied. Rule 23(b)(3) provides that a class action can be maintained where the questions of law and fact common to members of the class predominate over any questions affecting only individuals and where the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *see also Maxwell*, 2004 WL 719278, at *5.

18

The underlying purpose of Rule 23(b)(3)'s requirements is to assure that a class action has "practical utility" in the suit. *Hylaszek v. Aetna Life Ins. Co.*, No. 94-C-5961, 1998 WL 381064, at *3 (N.D. Ill. 1998). A case such as this – where individual recoveries for Plaintiff and the members of the proposed Class would be small and would likely not be pursued but for the class action process – is the quintessential rational for the "practical utility" of the class action mechanism under federal law. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (stating that "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights") (internal quotations and citations omitted).

The predominance and superiority requirements translate into the economy and efficiency that a class certification must bring to the litigation. 2 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 4:24 (4th ed. 2002). Here, the predominance inquiry is easily satisfied.

a. *Common issues predominate.*

Rule 23(b)(3) requires that common issues affecting the class predominate over any question affecting only individual members. The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions to render the class action valueless. *See In re Playmobil*, 35 F.Supp.2d at 243. The predominance requirement is generally satisfied where a "common nucleus of operative facts" exist. *Maxwell*, 2004 WL 719278, at *5. Class certification is not defeated even if there is some possibility that "separate proceedings of some character will be required to determine the entitlements of the individual class members to relief." *Carnegie v. Household Int'l Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). While the common issues must predominate, they "need not be exclusive." *Maxwell*, 2004 WL

719278, at *5; *see also Pleasant v. Risk Mgmt. Alternatives, Inc.*, No. 02-C-6886, 2003 WL 22175390, at *5 (N.D. Ill. 2003) (certifying class where "the central factual inquiry will be common to all" the class members); *Kremnitzer v. Cabrera & Rephen, P.C.*, 202 F.R.D. 239, 242 (N.D. Ill. 2001) (finding predominance met in class action where liability is predicated on the same legal theory and the same alleged misconduct). In fact, common legal and factual issues have been found to predominate in other TCPA class actions where the class members' claims arose under the TCPA and where the claims focused on the same course of conduct by the defendants. *See, e.g., CE Design*, 2009 WL 192481, at *8-9; *Stonebridge*, 289 F.R.D. at 294-95.

In this case, the common questions discussed above are at the heart of the litigation. The claims of Plaintiff and the proposed Class members all arise from Defendant's standardized conduct of sending text messages to individuals as part of its standard business practices. All Class members received a text message from Defendant and, by the very definition of the Class, all Class members received the message without having provided Defendant with their consent to receive such message. Consequently, Plaintiff and all Class members have been identically harmed and would be entitled to identical statutory damages under the TCPA. *See Baxter v. Kawasaki Corp.*, 259 F.R.D. 336, 343 (N.D. Ill. 2009) ("[W]hen the case involves standardized conduct towards the members of the class, predominance often is satisfied.") As such, the common questions that result clearly predominate over any individual issues that may exist.

    b.  *This class action is a superior method for the adjudication of the controversy*.

The instant class action is superior to any other method available to fairly and efficiently adjudicate the Class members' claims. The inquiry into whether the class action is the superior method for a particular case is viewed "from the standpoint of efficiency." *Eovaldi v. First Nat'l*

*Bank of Chicago*, 57 F.R.D. 545, 547 (N.D. Ill. 1972). "Rule 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006). A class action is superior to multiple individual actions "where the costs of litigation are high, the likely recovery is limited" and individuals are unlikely to prosecute individual claims absent the cost-sharing efficiencies of a class action. *Maxwell*, 2004 WL 719278, at *6; *Brady v. LAC, Inc.*, 72 F.R.D. 22, 28 (S.D.N.Y. 1976) (noting that "one of the primary functions of the class suit is to provide a device for vindicating claims which, taken individually, are too small to justify legal action but which are of significant size if taken as a group.")

In this case, absent a class action, most members of the Class would find the cost of litigating their claim – each of which is statutorily limited by the TCPA – to be prohibitive, and multiple individual actions would be judicially inefficient. Certification of the proposed Class is another needed step toward ensuring not only that individuals cease being harassed with unauthorized text messages, but also to compensate Class members for having their statutory privacy rights invaded and also to compensate those individuals who have wrongfully been charged money for such phone calls. Were this case not to proceed on a class-wide basis, it is unlikely that any significant number of Class members (or any at all) would be able to obtain redress or that Defendant would willingly alter its procedures and cease its unauthorized text message practices. Accordingly, common questions predominate and a class action is the superior method of adjudicating this controversy.

### B.     The Court Should Appoint Plaintiff's Counsel As Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In

making this determination, the Court must consider counsel's (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

As discussed above, proposed Class Counsel have extensive experience prosecuting class actions and other complex litigation of a similar nature, scope and complexity. (*See* Fogelman Decl., ¶¶ 2-3, 5; Leonard Decl., ¶¶ 2-3, 5.) Proposed Class Counsel have intimate knowledge of the law in this field. (*Id*.) Further, proposed Class Counsel have diligently investigated the claims at issue in this action and have, and will continue to, dedicate substantial resources to the investigation and prosecution of the claims. (Fogelman Decl., ¶ 6; Leonard Decl., ¶ 6.) Accordingly, the Court should appoint Plaintiff's counsel to serve as Class Counsel for the proposed Class pursuant to Rule 23(g).

## CONCLUSION

For the reasons discussed above, Plaintiff respectfully requests that this Court take this Motion under submission and stay any further activity on this Motion until after the discovery cutoff period set by this Court has been reached and after the parties can file supplemental class certification papers better informed by such discovery. In the alternative, Plaintiff requests that the Court certify the proposed Class, appoint Plaintiff Craig Moskowitz as Class Representative, and appoint Matthew J. Fogelman of Fogelman & Fogelman, LLC and Preston W. Leonard of Leonard Law Office, P.C. as Class Counsel.

Dated: October 15, 2014

Respectfully submitted,

CRAIG MOSKOWITZ, individually and on behalf of a class of similarly situated individuals

By: /s/ Matthew J. Fogelman
        One of His Attorneys

Matthew J. Fogelman, Esq.
FOGELMAN & FOGELMAN, LLC
305 Madison Avenue, Suite 936
New York, New York 10165
Tel: (212) 370-1530
mjf@fogelmanlawfirm.com

Preston W. Leonard, Esq. (*pro hac vice* to be submitted)
LEONARD LAW OFFICE, P.C.
63 Atlantic Avenue, 3rd Floor
Boston, Massachusetts 02110
Tel: (617) 329-1295
Pleonard@theleonardlawoffice.com

*Counsel for Plaintiff and the Putative Class*

## CERTIFICATE OF SERVICE

I, Matthew Fogelman, hereby certify that on October 15, 2014, I electronically filed the foregoing *Plaintiff's Memorandum of Law in Support of His Motion for Class Certification and for a Temporary Stay of Further Proceedings on that Motion* with the Clerk of the Court using the CM/ECF system.  A copy of said document will be personally served on Defendant.

/s/ Matthew J. Fogelman